FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ APR 18 2002 ★
BROOKLYN OFFICE

SPATT, J.
ORENSTEIN, M.J.

CV 02 2335

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JOSEPH P. MALECKI,

Plaintiff,

- versus -

DAYTON T. BROWN, INC.,

Defendant.

Civil Action No._____ (  )

**COMPLAINT**

DEMAND FOR A JURY TRIAL

## I.    JURISDICTIONAL STATEMENT

1. This action seeks compensatory, punitive and injunctive relief to redress discrimination against plaintiff Joseph P. Malecki ("Malecki") by Dayton T. Brown, Inc. ("DTB") based upon The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 621 *et seq.*, The Americans with Disabilities Act ("ADA"), 42 U.S.C. Sec. 12101, *et seq.*, and State Human Rights Law, New York State Executive Law Sec. 296, *et seq.* ("NYSHRL") Malecki filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter, which is annexed as Exhibit A.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sec. 1331 in that this is an action arises under federal question jurisdiction. The matter in controversy also exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. Sec. 1332.

3. The plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. Sec. 1367(a), over any and all state law claims that are so related to the claims in this action within the original jurisdiction of this Court that they are and form part of the same court or controversy.

4. The plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## II.   VENUE

5.   Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. Sec. 1391 (b) and (c).

## III.   SUMMARY OF COMPLAINT

6.   This is a proceeding to enforce Malecki's rights as a member of a protected class, an employee and a citizen of the United States of America and the State of New York.   This action arises out of the termination of Malecki in his sixty-eighth (68) year of life. Malecki was employed in DTB's Technical Communications Division for over 25 years.   Malecki was a loyal, dedicated and trusted employee.   Preceding Malecki's termination pursuant to an alleged reduction in force, DTB made inappropriate age-related comments indicating the true discriminatory reason for termination.   Soon thereafter, Malecki was dismissed without notice on or about April 16, 2001.

## IV.   PARTIES

### A.   Plaintiff

7.   At all times pertinent hereto, Malecki has been and is a resident of the State of New York, County of Suffolk.   From the early 1970s through April 16, 2001, Malecki was employed by DTB in the County of Suffolk as a Senior Illustrator.

### B.   Defendant

8.   At all times pertinent hereto, Defendant DTB has been a corporation organized under the laws of the State of New York with its principal place of business in the State of New York, County of Suffolk.   DTB is engaged in the business of product service support services in a variety of technical fields, particularly aeronautics, including engineering, sheet metal fabrication and testing, technical communications and test systems in both government and private industry. DTB employs over two hundred employees, meeting statutory minimums under the ADEA, ADA and NYSHRL.

## V.   **STATEMENT OF FACTS**

Background

9.   At the time of his termination, Malecki was a sixty-eight year old artist, who was employed in DTB's Technical Communications Division for over twenty-five years.

10.   Malecki was a traditionally trained illustrator who learned and used computers. He trained others to use programs he learned at the firm because he adapted and taught well.

11.   Malecki had always been given the most difficult projects in the department, trained people, generally and in specific computer programs, as well as worked whatever hours were necessary, including long hours and weekends at times.

12.   Malecki received commendations from DTB and clients for the quality of his work.

13.   Malecki was the company's oldest employee, older even than Dayton T. Brown, Jr., the company's owner. Mr. Brown said to Malecki when he received his twenty-fifth year award in 2000: "I'm getting old." Malecki responded: "I'm five years your senior."

14.   The company was well aware of Malecki's age, as well as conscious of age generally. Comments were made to Malecki in the office by management that he was "getting rich" collecting social security benefits on top of his regular salary. He recalls this and similar statements made by supervisor Manny Pena and chairperson Anthony Donato, then echoed generally by his colleagues in the department.

15.   Profit sharing records, newsletters and other indicators did not show any significant problems with company finances and he had been there for over twenty-five years.

16.   There was plenty of work at the office.



### The Termination and the Status of the Company

17.     On Monday, April 16, 2001 at 3:00 p.m., Malecki was working on two projects for major aircraft companies, Sikorski and Boeing, when he was tapped on the shoulder and told he had to attend a meeting. Malecki was led out of the office and, with accumulations of over 25 years at his desk, he was told not to turn on the computer, to put his things in a box and leave.

18.     Malecki and others were told there was a "reduction in force" and they were terminated. They were put in a room and told they could not leave until they signed a document, a copy of which they never received. DTB terminated Malecki after a forty six-year career as part of an alleged "reduction in force" on April 16, 2001; however, this alleged "reduction in force" was actually an excuse for getting rid of Malecki because of discrimination due to age and a perceived disability.

### The Company Tried to Interfere with Benefits and Force a Retirement on Malecki

19.     Malecki was also told by Angela Chewing, a vice president of DTB, ("Chewing") that he would not be permitted to seek unemployment insurance and not to bother applying. This was untrue.

20.     Since that time, the company interfered with unemployment benefits by offering Malecki a non-bona fide offer of re-employment, as will be discussed below.

21.     Malecki and his wife went to the office after his termination to discuss health insurance and other issues. The company told them that his wife could continue health insurance with them if she paid for it, but that he could only get dental coverage and that he had to go on Medicare.

22.     Malecki wanted and needed to work as long as he could work. When they had previously been in the DTB office, Mr. and Mrs. Malecki were still in shock, confused and asked why DTB did not come and talk to them, why they did not come to an understanding and give him some warning.

23.     DTB attempted to pressure Malecki into signing a letter it drafted to treat his termination as a retirement, so that he could not collect unemployment benefits or sue them.    DTB offered $1,150 and asked him to sign a "Release," but he refused.

24.     DTB had already cut the check in their plans to force a retirement upon Malecki, as upon doing their taxes, Malecki found out that the additional amount of income offered, the $1,150 offer that he never accepted, had been placed in his Internal Revenue Service ("IRS") Form W-2.

25.     Malecki then received a letter dated April 19, 2001 stating that he had requested to treat the matter as a retirement, as he "was going to retire in June" and that he wanted to attend company functions.

26.     Malecki was not going to retire in June and he was outraged that they attempted such deceit in their letter.  Malecki and his wife immediately went to the office the very same day they received the letter on April 20, 2001 to confront them and told DTB in a meeting that he was unhappy that DTB was terminating him, that he did not want to retire anytime soon, as well as to advise DTB that he believed that they were discriminating against him because of his age.

27.     Malecki's counsel wrote to the company and asked for a list of the job titles and ages of others in the so-called "reduction in force," but the company refused to provide that information.

The Company Perceived Malecki as Disabled

28.     The company further wrongfully perceived Malecki to be disabled due to a heart condition.  He was hospitalized for three months and on disability from approximately March 1992 through June 1992.

29.     He was again on disability due to a hospitalization recently after Malecki was in a car accident, causing problems with his heart condition.  Malecki was required by his doctor to be on disability for over a month from January 26, 2001 through March 1, 2001.  The company had records of each of his disabilities.

30. Malecki was terminated less than two months after his last heart problem and disability period. The company has self-insured medical coverage.

## Shortly After Termination, The Company Advertised for Younger Employees for Malecki's Position

31. Malecki was and continue to be a qualified artist, both on blue prints and on the computer. Shortly after he was terminated he began looking for work and saw advertisements in the local newspaper on June 10, 2001. Dayton T. Brown was seeking younger persons to fill his job, noting that the company's

> atmosphere [is] conducive to professional growth and family values. You'll enjoy our on-site softball field, holiday parties, picnics and sports. . . .

## After He Complained about Discrimination, the Company Offered Malecki a Low-Level Position and Told Him He Could Work Overtime in Retaliation

32. After complaining to the company about age discrimination, on Tuesday, June 12, 2001, Malecki received a letter allegedly sent on and dated Friday, June 8, 2001 in which they offered him the lowest, entry-level position at the lowest salary, unsuitable given his forty-six years of experience and training.

33. The company did not specify the duration of the employment or the hours he would work, but it was apparently temporary. They also told Malecki that to make up the salary difference, he could work overtime.

34. It seemed odd that a company that had laid Malecki off less than two months prior wanted to rehire him in an entry level position that he had trained people in (although they said they had to train him in it) at a lower salary working overtime.

35. Furthermore, the letter indicated that they needed illustrators trained in Auto-Trol, as well as that they would train him in that software. In fact, Malecki had already done work for clients, for example, Boeing, using Auto-Trol.

36.     Then, in a letter to the New York State Department of Labor, DTB admitted that the offer was false, stating as follows:

> This offer was predicating upon our receipt of a new contract that we expected to receive by the end of June or early July and under which work would have been released almost immediately. Unfortunately, the contract vehicle was delayed somewhat. We are still waiting for our customer to release his contract and expect this to take place within the next several weeks. In all fairness to Mr. Malecki, since the work has not yet been released by our customer at the time we anticipated, neither Mr. Malecki nor the other individuals we contacted would have been able to start working until this contract was officially released by our customer.

The manner and timing in which this offer and recanting indicates that this was not a true offer and actually unnecessary and unwarranted retaliation, abuse and discrimination.

## The Company Admitted They Were Wrong

37.     Malecki is a modest, honest family man, a hard worker and a person who wanted to and needed to work. He told the company that he would be willing to take his old position back. He would not, though, agree to be disgraced and humiliated.

38.     Malecki even offered to accept a consulting arrangement that would be suitable given his experience and training.

39.     DTB never responded to Malecki's offer; however, Chewing said "we made a mistake."

<u>The Aftermath</u>

40.   After being terminated, Malecki contacted people and clients in the industry to obtain work; however, he was unable to secure alternative employment.

41.   Inability to find employment lead to depression and Malecki sought and received counseling from a psychologist for approximately three months, as well as still struggles with these issues.

## VI.   CONCLUSION

47.   As a result of defendants' conduct, Malecki has suffered and continues to suffer severe professional, economic and emotional distress, for which he should be compensated and made whole.

## VII.   CAUSES OF ACTION

### First Cause of Action:
### VIOLATION OF THE ADEA:
### Age Discrimination

48.   Plaintiff Malecki realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

49.   The Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 *et. seq.*, prohibits discrimination against employees who are forty years and older.

50.   Defendants had a discriminatory reason or motive for taking adverse employment action against Malecki, either directly or indirectly.

51.   Evidence of intentional discrimination includes oral or written statements, remarks and/or actions showing a discriminatory motive for the defendant's treatment of Malecki.

52.   The non-discriminatory reason offered by the employer/defendants to the EEOC were pretextual and DTB intended to disfavor Malecki because of his membership in the protected class, which was a motivating factor in the defendant's decision to take adverse employment action against him and not offer available positions to him that would still exist for which he was qualified, because age made a difference.

8

53.   Membership in a protected class was a motivating factor in the defendant's decision, even though other factors may have also played roles in that decision.

54.   Malecki can prove pretext by establishing that his membership in a protected class was more likely the reason for the defendant's decision than the reason stated by the defendant.

55.   Malecki can also prove that the defendant's stated reason for its adverse employment decision was a pretext by showing that it is just not believable.

56.   DTB violated the ADEA by discriminating against Malecki because of his age, requiring that he be treated the same as other employees and age not being considered as a criteria.

57.   Malecki has been injured by defendant's intentional violations of the ADEA, for which Malecki has been damaged in an amount, which cannot be readily ascertained.

58.   Malecki has suffered from lost wages, benefits, equity participation, embarrassment, humiliation, fear, physical and psychological illness, attorney's fees, expert witness fees, costs and other compensatory damages.

59.   Malecki is entitled to liquidated damages on the form of back pay with interest, attorney fees and litigation costs for DTB's intentional actions.

**Second Cause of Action:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT:**
**Perceived Disability Discrimination**

60.   Plaintiff Malecki realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

61.   DTB violated the Americans with Disabilities Act, 42 U.S.C. Sec. 12101, *et. seq.*, ("ADA") when defendants discharged Malecki without just or good cause or without notice after suffering significant medical issues.

62.    Although not actually disabled, due to pre-existing heart conditions and leaves necessitated thereby, Malecki was perceived disabled and eligible employee under the ADA.

63.    DTB's discharge of Malecki on or about April 16, 2001 was intentionally done to discriminate against Malecki and deprive him of his eligible right to work.  Malecki was terminated and not offered available positions that would still exist for which he was qualified, because of the perceived disability.

64.    Malecki may recover money compensatory and punitive damages, attorney's fees, expert witness fees and costs.

### Third Cause of Action:
**VIOLATION OF NEW YORK STATE STATUTES:**
**VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAWS:**
**NEW YORK STATE EXECUTIVE LAW**

65.    Plaintiff Malecki realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

66.    State Human Rights Law, NYS Exec. Law Sec. 296 *et. seq.*("NYHRL"), prohibits discrimination on the basis of age, race, color, sex, national origin, religion, disability, or marital status.   Specifically, "[e]mployers may not decide to hire, fire, or promote because of an employee's marital status."

67.    Article 15 of the New York Executive Law was designed to insure every individual within the State of New York "is afforded an equal opportunity to enjoy a full and productive life." NYHRL, Sec. 290.   Equality of opportunity is a civil right and defined to include "employment without discrimination because of age, race, creed, color, national origin, sex or marital status." See NYHRL, Secs. 29 and 296 and NY Civ. Rights Law, sec. 40c-(2).

68.    NYHRL includes age discrimination, not treating older employees differently because of their age.

69.    Defendants engaged in disparate treatment against a protected group as a standard operating procedure and caused purposeful or intentional discrimination. DTB fired older employees more readily than younger employees and sought younger employees to replace older employees.

70.    Malecki may recover money damages, lost wages, benefits, equity participation, embarrassment, humiliation, fear, physical and psychological illness and other compensatory damages. He is entitled to injunctive relief, back pay with interest, front pay (lost future earnings), attorney's fees, expert witness fees and costs.

## IX.    RELIEF SOUGHT

71.    As a direct and proximate result of the foregoing acts and omissions of defendants, Malecki have been injured and seeks the following relief, in the total amount of not less than $500,000:

### A. Damages:

#### 1. Back Pay

71.    Actual damages, an amount that reasonably compensates Malecki for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Malecki would have received had he not been discriminated against.

#### 2. Front Pay

72.    Future damages, a monetary amount equal to the present value of the wages and benefits that Malecki would have earned had he not been discriminated against for that period from the date of Malecki's verdict until the date when the Malecki would have voluntarily resigned or obtained other employment.

#### 3. Compensatory Damages

73.    In addition to compensatory damages for lost wages, Malecki is entitled to recover for emotional distress or mental anguish resulting from defendant's intentional discrimination in view of the nature, character, and seriousness of any pain and suffering is considered as well as its extent or duration.

### 4.  Punitive

74.    Punitive damages are awarded in certain cases as a punishment and as a warning to others to keep them from following the defendant's example. Malecki will prove by a preponderance of the evidence that one of the defendant's acts were done with either:

(a) actual malice, that is, intentional wrongdoing -- en evil minded act; or

(b) a wanton and willful disregard for the rights of another -- in other words, a deliberate act with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of the act.

75.    Punitive damages are not intended to compensate Malecki, but to punish the defendant and to prevent similar conduct in the future.    Thus, the defendant's net worth and the impact of its paying that award must be considered, in reasonable relationship to Malecki's actual injuries and the attitude of the defendants.  Punitive damages under the ADA are on a sliding scale based upon the number of employees in a given employer's workforce, as follows:

| Number of Employers | Maximum |
|---|---|
| 15-100 | $50,000 |
| 101-200 | $100,000 |
| 201-500 | $200,000 |
| 501 or more | $300,000 |

### 5.    Attorneys/Expert Witness Fees:

76.    The court may award reasonable attorneys' fees to the prevailing party.

### 6.    Interest

77.    Plaintiff Malecki seeks interest compounded annually at the rate of 10%, or the then lawful rate, to be assessed at the time of the trial.



**WHEREFORE,** Plaintiff Malecki demands judgment against defendants as follows:

(i)     on the first cause of action, compensatory damages in a sum in excess of $500,000, with interest, plus an award of reasonable attorney's fees and costs;

(ii)    on the second cause of action, compensatory damages in a sum in excess of $500,000, with interest, including an award of reasonable attorney's fees and costs, and punitive damages; and

(iii)   on the third cause of action, compensatory damages in a sum in excess of $500,000, including an award of reasonable attorney's fees and costs, and punitive damages.

Dated: New York, New York
April 17, 2002

Respectfully submitted,

THE LAW OFFICE OF
JENICE L. MALECKI

Jenice L. Malecki, Esq. (JLM-2871)
*Attorney for Plaintiff*
**Joseph P. Malecki**
11 BROADWAY, SUITE 400
NEW YORK, NEW YORK 10004
(212) 943-1233 TELEPHONE
(212) 943-1238 FACSIMILE
JENICE.MALECKIESQ@GTE.NET

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

| To: Joseph Malecki<br>163 SIXTH AVENUE<br>HOLTSVILLE, NY 11742 | From: E.E.O.C<br>Buffalo Local Office<br>6 Fountain Plaza Suite 350<br>Buffalo, New York 14202 |
|---|---|

☐ On behalf of a person aggrieved whose identity is CONFIDENTIAL ( 29 C.F.R. 1601.7(a) )

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 165A200110 | Charlene L. McKinnon | (716) 551-4441 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ We cannot investigate your charge because it was not filed within the time limit required by law.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge. While reasonable efforts were made to locate you, we were not able to do so.

☐ You had 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state) _____

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission

_signature_

Elizabeth Cadle, Director        JAN 17 2002
                                 (Date)

Enclosure(s)

cc: DAYTON T. BROWN, INC.
555 CHURCH STREET
BOHEMIA, NY 11716

**CHARGING PARTY COPY**

# EXHIBIT A